IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>CARLOS MORENO-LOPEZ,<br><br>  Defendant. | NO.   CR 08-00069-TUC-FRZ(BPV)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS** |

On January 16, 2008, Defendant Carlos Moreno-Lopez was indicted for Illegal Re-Entry After Deportation [Doc. 5]. On November 6, 2008, Defendant filed a Motion to Suppress Statements [Doc. 26]. On November 7, 2008, the Government filed a Notice of Confessions, Admissions, and Statements Pursuant to Local Rule 16.1 [Doc. 27] and on November 19, 2008, filed its Response to Defendant's Motion to Suppress [Doc. 29].

The matter came on for Evidentiary Hearing before the Court on two non-consecutive days, November 20, 2008, and March 12, 2009. In total, the Government called as witnesses U.S. Immigration and Customs Enforcement Agent Robert Jacobs and U.S. Border Patrol Agents Jared Gast, John Scott, Benjamin Anderson, and William Beltran. The Defendant called as witnesses Federal Public Defender's Investigator William Orlando Reyes and Defendant Carlos Moreno-Lopez

The Court, having considered the briefing, arguments, and evidence presented, recommends that the District Judge, after his independent review and consideration, enter an order **DENYING** Defendant's Motion to Suppress Statements [Doc. 26].

# FACTS

On December 19, 2007, U.S. Border Patrol Agents Jared Gast and John Scott were patrolling in and around Meneger's Dam, Arizona (on the Tohono O'Odham Indian Reservation). The agents discovered and followed human footprint signs of a group of six from the international border towards an abandoned house. At some point, the group divided into two groups. The agents followed the more prominent tracks, which led to a house the agents knew was used as a stash house for narcotics and illegal aliens.

Once the agents approached the house, Agent Gast observed an individual (later identified as Defendant Carlos Moreno-Lopez) sitting on a couch, with his feet propped on several bundles of marijuana. Agent Gast identified himself as a Border Patrol Agent and told the individual to stay where he was. Mr. Moreno-Lopez ran through the house to the rear, where he jumped out a window and ran towards the international border.

Unfortunately for Mr. Moreno-Lopez, there was a three-strand barbed-wire fence at the south end of the abandoned house. The Defendant collided with the fence and flipped over onto the other side. He recovered his footing, ran a few steps, and tripped again on a fallen fence. At this point, Agents Gast and Scott apprehended the Defendant. Eventually, Mr. Moreno-Lopez was subdued and handcuffed. He claimed he was apprehended and injured as he was crossing the international fence and was dragged back into the United States by the Border Patrol Agents.

Subsequent to the agents searching the area for other potential marijuana smugglers, they asked the Defendant if he was a U.S. citizen or an individual with documents allowing him to be in the United States. Mr. Moreno-Lopez responded no to both questions. After the immigration inspection, the agents read Mr. Moreno-Lopez his Miranda rights.

The arresting agents did not ask the Defendant for a waiver of his rights because they had no intention of asking him any questions. At that point, this Court believes the agents were prosecuting a narcotics case.

Of his own accord, the Defendant offered to trade his liberty for the location of another load of marijuana. The agents declined the offer or, at the very least, ignored Mr.

1  Moreno-Lopez. Thereafter, he was transported to the Ajo Border Patrol Station in Why,
2  Arizona.

3      At the station, the Defendant aggressively and loudly complained about pain in his
4  ribs. The shift supervisor, who was an EMT, examined Mr. Moreno-Lopez and, at the
5  Defendant's request, transported him by ambulance to the Sells Hospital.

6      Agents Gast and Scott believed Mr. Moreno-Lopez looked and acted as if he were
7  under the influence of an illicit substance. Both men, however, felt the Defendant was in
8  control of his mental faculties. Mr. Moreno-Lopez denied being under the influence of any
9  drugs.

10      Border Patrol Agent Benjamin Anderson was assigned the duty of taking a statement
11  from Mr. Moreno-Lopez. At the time Agent Anderson met the Defendant, he thought the
12  Defendant was cooperative and "not acting out of the ordinary".

13      Prior to questioning the Defendant, Agent Anderson advised Mr. Moreno-Lopez of
14  his rights pursuant to Miranda. He also answered the Defendant's question about what
15  charges were being brought against him. Agent Anderson advised Mr. Moreno-Lopez that
16  he was being prosecuted for illegal re-entry, but not for possession of marijuana.

17      Subsequent to Agent Anderson administering the Miranda warning, the Defendant
18  indicated he was willing to answer the agent's questions. Agent Anderson thought the
19  interrogation occurred at 10:00 a.m., when, in fact, the Defendant was interviewed between
20  2:30 p.m. (Exhibit 5) and 3:45 p.m. (Exhibit 3) on December 19, 2007.

21      The Defendant testified that he was told by the Border Patrol agent to sign his name
22  on any document presented to him. He did this while in pain that resulted from the agents'
23  rough handling of him during his arrest. He also signed the documents because he was afraid
24  of the agents and wanted to get away from them. While he was at the hospital, Mr. Moreno-
25  Lopez told the doctor he had been beaten by the Border Patrol agents. The translating agent,
26  although not involved with the arrest of the Defendant, apparently told the doctor that Mr.
27  Moreno-Lopez ran into a fence (Exhibit 10).

28

## **DISCUSSION**

This case presents two different versions of what occurred on December 19, 2007. The Government's case is somewhat complicated because the Border Patrol agents are presented with written forms that, if properly completed, would eliminate all doubt about what occurred. The practice regarding these documents is to ignore the portions of the forms that eliminate doubt. Consequently, the Court is forced to rely on the testimony of the interviewing agent.

The Defendant has asked this Court to consider:

a) The time elapsing between the arrest and the arraignment of the Defendant: In this case,. the Defendant was interviewed the same day he was arrested.

b) Whether the Defendant knew the nature of the offense he was suspected of at the time of the interrogation: In this case, Mr. Moreno-Lopez was willing to talk about his illegal entry once he was assured he was not being prosecuted for possession of marijuana.

c) Whether the Defendant was advised and or knew that he was not required to make any statement and that any statements could be used against him: In this case, the Defendant was advised of his rights and stated that he would trade the location of additional marijuana for his liberty.

d) Whether the Defendant had been advised of his right to assistance of Counsel: In this case, the Defendant was advised twice of his rights to remain silent and to Counsel before a statement was voluntarily taken from him.

e) Whether the Defendant had the assistance of Counsel during the interrogation: In this case, the Defendant did not have Counsel nor did he request Counsel.

Under the totality of the circumstances, this Court finds that the Defendant was advised of his rights pursuant to Miranda, that he voluntarily waived those rights, and that he voluntarily answered the agents' questions. The Court also finds that the Defendant's version of the events is not credible.

## **CONCLUSION**

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **DENYING** Defendant's Motion to Suppress Statements [Doc. 26].

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections filed should be filed as CR 08-00069-TUC-FRZ.

DATED this 31st day of March, 2009.

_____
Bernardo P. Velasco
United States Magistrate Judge